TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00621-CR






Larry Collins, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT


NO. 3010161, HONORABLE FRANK W. BRYAN, JR., JUDGE PRESIDING 






M E M O R A N D U M O P I N I O N




 Larry Collins appeals from his conviction for aggravated assault with a deadly
weapon. See Tex. Pen. Code Ann. § 22.02 (West 2003). After the jury found him guilty of the
offense, it assessed punishment at imprisonment for nine years in the Texas Department of Criminal
Justice-Institutional Division. In three issues on appeal, appellant contends that the evidence was
factually and legally insufficient to prove aggravated assault because the State did not prove that a
deadly weapon was used and that a mistrial should have been granted based on an improper
prosecutorial comment during the punishment phase. We affirm the conviction.


Factual and Procedural Background



 Officer Chris Gray of the Austin Police Department testified that he answered a police
call in January 2002 that reported an assault at an apartment complex in North Austin. He found
Ana Angulo, the victim of the attack, sitting on a stairwell. She appeared to be "in a significant
amount of pain," and was afraid, fearful, and injured. He testified that her hair was matted down
with blood and her shirt was soaked with blood. She told him that she had been going to do her
laundry. A black male came out from behind the laundry-room door holding a "dark-colored
baseball bat." He swung the bat over his head and hit her in the head; as he swung again, she tried
putting up her hands to block the blow. They struggled; she was able to escape, running to her own
apartment. Family members called the police with a description of the assailant, who was
apprehended in the area. He was brought back to the apartment complex. When Angulo saw him,
she began crying hysterically and identified him as the attacker. Gray also testified that based on his
training as a police officer, in his opinion the object used was a deadly weapon.

 Ana Angulo testified. She said it was hard to open the door to the laundry room, as
if something were behind it. She described the attack and how she tried to cover her head. She said
the attacker had a bat in his hand. She said that when he hit her it felt like a bat because it was hard. 
At another point she described the object as a metal stick or pipe. She said that during the attack,
she thought he wanted to kill her. 

 Rebecca Spellman authenticated the medical records of the victim. The victim was
treated and released. Her injuries were described as abrasions, a scalp laceration, a hematoma, and
a deep bruise on her face, but were not life-threatening. The emergency room physician's notes
indicated that he did not believe that Angulo had suffered a serious head injury.


Discussion


Deadly Weapon

 In his second and third points of error, appellant contends that the evidence is
factually and legally insufficient to support his conviction. In order to prove aggravated assault with
a deadly weapon, the State must prove an assault and that the assault involved the use of a deadly
weapon. Tex. Pen. Code Ann. § 22.02(a)(2) (West 2003); Teal v. State, 543 S.W.2d 371, 373 (Tex.
Crim. App. 1976). Appellant argues that the State failed to prove the deadly weapon element.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found beyond a reasonable doubt all the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). 
All the evidence that the jury was permitted to consider properly or improperly must be taken into
account in determining the legal sufficiency of the evidence. Garcia v. State, 919 S.W.2d 370, 378
(Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). On appeal,
we do not reevaluate the credibility of the witnesses or realign, disregard, or weigh the evidence. 
Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). 

 To determine factual sufficiency, we view the evidence in a neutral light and set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996)). We must review the evidence weighed by the jury
tending to prove the existence of the elemental fact in dispute and compare it to the evidence tending
to disprove that fact. Id. The appellate court may find either that the State's proof of guilt was so
obviously weak as to undermine confidence in the jury's determination or that the finding of guilt
was against the great weight and preponderance of the evidence. Id. at 11. When the defendant
proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone,
is greatly outweighed by the defendant's evidence. Id. However, a factual sufficiency review must
be appropriately deferential to avoid intruding on the fact finder's role as the sole judge of the weight
and credibility of the evidence. Id. at 7; Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). Unless the available record clearly indicates a different result is appropriate, an appellate
court must defer to the jury's determination concerning what weight to give to contradictory
testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. 
Johnson, 23 S.W.3d at 8. We are not free to reweigh the evidence, but must exercise our jurisdiction
only to prevent a manifestly unjust result. Jones, 944 S.W.2d at 648.

 One definition of a deadly weapon is "anything that in its manner of use or intended
use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B)
(West 2003). Under this definition, the evidence must establish that the object was capable of
causing death or serious bodily injury as used. Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim.
App. 1995); Holder v. State, 837 S.W.2d 802, 807 (Tex. App.--Austin 1992, pet. ref'd). A variety
of factors may be considered in deciding whether a weapon qualifies as a deadly weapon. The nature
and severity of the wounds inflicted may be considered. Garcia v. State, 17 S.W.3d 1, 4-5 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). Other factors include the physical proximity between the
victim and the object, the weapon's innate ability to inflict death or serious injury, and the manner
in which the defendant used the weapon. Bailey v. State, 46 S.W.3d 487, 491-92 (Tex.
App.--Corpus Christi 2001, pet. ref'd). No one factor is determinative. Id. The fact that a victim
might not know exactly what the weapon was does not preclude a deadly weapon finding. See
Moore v. State, 740 S.W.2d 883, 885 (Tex. App.--Tyler 1987, no pet.).

 A deadly weapon finding is appropriate when a defendant uses an object in such a
way as to threaten deadly force. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). 
However, the possibility of serious bodily injury or death must be more than merely hypothetical. 
See Williams v. State, 946 S.W.2d 432, 435 (Tex. App.--Fort Worth 1997), rev'd on other grounds,
970 S.W.2d 566, 566 (Tex. Crim. App. 1998). Bats and pipes have been found to be deadly
weapons. McElhaney v. State, 899 S.W.2d 15, 16-17 (Tex. App.--Tyler 1995, pet. ref'd) (pipe;
testimony of victim as to repeated blows and victim's opinion that pipe was capable of causing death
or serious bodily injury enough to show deadly weapon); Fugett v. State, 855 S.W.2d 227, 229 (Tex.
App.--Fort Worth 1993, no pet.) (victim struck in groin with baseball bat; police officer's testimony
that bat was a deadly weapon as used sufficient even though victim did not suffer serious bodily
injury).

 In this case, Angulo testified that the assailant used a bat or pipe. She described how
he swung the bat over his head with both hands and brought it down on her head. She tried to
protect her head, and suffered blows to her arms. She said that she was afraid that he was trying to
kill her. Police officer Gray testified that the weapon was capable of causing serious bodily injury. 
Appellant focuses on variances in Angulo's identification of the object used. However, the inability
to identify the item exactly is not determinative. See Moore, 740 S.W.2d at 885 (victim identified
weapon as gun, was actually knife). Appellant also argues that Angulo was not injured severely
enough to demonstrate that the object used was a deadly weapon. Although the possibility of serious
injury or death must be more than hypothetical, the State must prove only that the object was
capable, in the way in which was used, of causing serious injury or death. See Adame v. State, 69
S.W.3d 581, 582 (Tex. Crim. App. 2002) (testimony that BB gun capable of inflicting serious bodily
injury; not necessary for State to show was actually loaded). It is not necessary that serious injury
or death actually occur to establish an object as a deadly weapon. See Fugett, 855 S.W.2d at 229. 
Angulo's description of the appellant as raising his hands over this head and then swinging down
at her head would allow the jury to draw a reasonable inference that appellant was attempting to do
as appellant feared--strike a blow forceful enough to kill her. Based on Angulo's and Gray's
testimony, a rational jury could have found beyond a reasonable doubt that a deadly weapon was
used. See Jackson, 443 U.S. at 319.

 When we examine the evidence in a neutral light, we conclude that it was factually
sufficient as well. Some confusion in the description of the object as to whether it was a bat or a
pipe does not negate the fact that the object fell into the general category of hard blunt objects
capable of causing serious injury when used to strike another person on the head. Nor does the fact
that Angulo was able to escape the attack short of suffering death or a coma, render the possibility
of serious injury from blows to the head merely hypothetical. The verdict is not against the great
weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. We overrule appellant's
second and third issues.


Improper Comment

 In his second point of error, appellant claims that the prosecution improperly
commented on appellant's failure to testify through a question asked to a probation officer at the
punishment stage of trial. The question asked whether an admission of responsibility for his conduct
is an important factor in considering whether a defendant is a good candidate for probation. 
Appellant objected; the trial court sustained the objection and instructed the jury to disregard. The
judge declined to grant a mistrial, however. Appellant contends that the question referred to his
failure to testify because that would be the way in which he would admit remorse.

 The failure of an accused to testify may not be the subject of comment by the
prosecution. Montoya v. State, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987) (op. on reh'g); Lopez v.
State, 793 S.W.2d 738, 741 (Tex. App.--Austin 1990, pet. dism'd). Such a comment is in violation
of the privilege against self-incrimination contained in the Fifth Amendment to the United States
Constitution and in article I, section 10 of the Texas Constitution. Griffin v. California, 380 U.S.
609 (1965); Allen v. State, 693 S.W.2d 380, 381 (Tex. Crim. App. 1984) (op. on reh'g). Further,
comments by the prosecutor referring to a defendant's failure to testify also violate article 38.08 of
the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979);
Montoya, 744 S.W.2d at 34. A violation occurs when a prosecutor makes remarks that are
manifestly intended or are of such character that the jury would naturally and necessarily consider
them to be a comment on the accused's failure to testify. Allen, 693 S.W.2d at 385. The
prosecutor's remarks must be viewed from the standpoint of the jury, and there must be a clear
implication that the language used referred to the accused's failure to testify. Dickinson v. State, 685
S.W.2d 320, 323 (Tex. Crim. App. 1984). It is not sufficient that the language might be construed
as an implied or indirect allusion to the defendant's failure to testify. Montoya, 744 S.W.2d at 35. 
In applying this standard, the facts and circumstances of each case must be analyzed to determine
whether the language used was improper. Id.

 At the punishment stage of the trial, appellant called Maria Anderson, a probation
officer for Travis County. Appellant slowly and carefully elicited the large number of possible
conditions of probation, including the fact that violation of any one condition could result in
revocation of probation and jail. The prosecutor then asked questions about the factors that would
be considered in determining whether a hypothetical defendant would be a candidate for probation. 
The State then asked whether a report was compiled to assist in making the probation
recommendation. The State then asked: "And would you agree with me that one of the most
important things that a defendant can do in order to obtain probation is to admit the conduct that he
has been charged with?" Appellant objected; the objection was sustained and the jury instructed to
disregard. The court overruled appellant's motion for mistrial. The State then asked some general
questions about the level of supervision provided to probationers. The State also introduced multiple
previous non-felony convictions.

 The prosecutor's question was not an impermissible comment on appellant's failure
to testify. The question was asked in the context of a series of questions trying to determine what
factors were considered in making a recommendation for probation--not in the context of asking
whether appellant was a suitable candidate. At the point at which the State asked the question,
appellant had just been found guilty by the jury. The State was cross-examining a defense witness
on punishment. The defense had not yet rested. At the point at which the State made the comment,
appellant still had the ability to testify, and so the remark was not a direct comment on his failure
to testify during punishment.

 Even if error occurred, it was cured. Generally, error associated with an improper
comment, including a comment on a failure to testify, can be cured by an instruction to disregard. 
Long v. State, 823 S.W.2d 259, 269 (Tex. Crim. App. 1991). Reversal is required only if the 
argument was extreme, manifestly improper, injects new and harmful facts into the case, or violates
a mandatory statutory provision such that it is so inflammatory that an instruction to disregard cannot
cure its prejudicial effect. Trevino v. State, 979 S.W.2d 78, 80 (Tex. App.--Austin 1998, pet. ref'd).

 In this case, the question asked was not extreme. This question was one of a series
of questions designed to find out under what circumstances this probation officer thought probation
should be granted in general. It was similar to a comment made during jury argument found to be
cured in Gardner v. State, 730 S.W.2d 675 (Tex. Crim. App. 1987). In Gardner, the prosecutor said: 
"[W]e've heard a lot from the Defense and we've heard a lot from everything else in this courtroom
but we haven't heard anybody say that they are truly sorry about what happened to [the victim]." 
730 S.W.2d at 700. The Court of Criminal Appeals held that, although the remark there could be
considered a comment on the defendant's failure to take the stand and personally admit remorse, any
harm that may have resulted was cured by the prompt instruction to disregard. Id. We conclude that
if the question was an erroneous comment on appellant's failure to testify, it was cured by the prompt
instruction to disregard. We overrule appellant's first issue.


Conclusion



 We have overruled appellant's three issues. We affirm the conviction.



 __________________________________________

 W. Kenneth Law, Chief Justice


Before Chief Justice Law, Justices B. A. Smith and Puryear


Affirmed


Filed: August 29, 2003


Do Not Publish